UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HENRY HUSEYIN CUHADAR and GURHAN ERGEZER, individually and on behalf of all other similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAVOYA, LLCS<br><br>*Defendant*. | § § § § § § § § § § § § § §  Civil Action No. 3:25-CV-0443-X |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Savoya's Partial Motion to Dismiss Plaintiffs' First Amended Complaint and Motion to Strike Plaintiffs' Rule 23 Class Action Allegations. (Docs. 11, 13). After considering the relevant law and the arguments of parties the Court **GRANTS IN PART** Savoya's Motion to Dismiss. Additionally, the Court **FINDS AS MOOT** Savoya's Motion to Strike. This will result in dismissal, without prejudice, of Counts III, IV, V, VI, VII, and VIII of the Complaint, termination of any basis for maintenance of this matter as a class action, and continuation of the case in this Court as a Fair Labor Standards Act (FLSA) collective action. The Court **GRANTS LEAVE** to the parties to file briefing stating their objections, if any, by October 22, 2025.

### I. Background

Plaintiffs Henry Huseyin Cuhadar and Gurhan Ergezer individually and on behalf of others similarly situated filed this suit against Savoya alleged violations of

1

the FLSA and the New York Labor Law. Savoya operates a chauffeured limousine and luxury car transportation business. Plaintiffs, former Savoya limousine drivers in the New York City area, believe that Savoya misclassified them as independent contractors instead of employees and denied them overtime premiums and expense reimbursements, among other violations.

## II. Legal Standards

### A. Rule 12(b)(1)

When a party files a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction in conjunction with other Rule 12 motions, a court must resolve the jurisdictional challenge first.[1] This prevents a court that lacks jurisdiction from improperly dismissing a case on its merits.[2] "A court must dismiss a complaint if it lacks subject-matter jurisdiction."[3] And such dismissal is always without prejudice.[4]

The party asserting jurisdiction carries the burden to prove it.[5] At the pleading stage, the party may meet its burden by alleging a plausible set of facts that establish jurisdiction.[6] A court may look to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[7]

---

[1] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[2] *Id.*

[3] *Santos v. United States*, 565 F. Supp.3d 871, 872 (W.D. Tex. 2021).

[4] *See Ramming*, 281 F.3d at 161.

[5] *See id.*

[6] *See id.*

[7] *Willoughby v. U.S. ex rel. Dep't of Army*, 730 F.3d 476, 479 (5th Cir. 2013).

2

To bring a case before a federal court, a plaintiff must have standing—the "bedrock constitutional requirement" that restrains the judiciary and preserves separation of powers.[8] The Supreme Court has outlined the requirements of standing under the Constitution:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[9]

An injury in fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[10] But statutes "cannot dispense with the injury requirement altogether."[11] "Put differently, the deprivation of a right created by statute must be accompanied by 'some concrete interest that is affected by the deprivation.'"[12] An injury must also be particularized, which the Supreme Court has defined to mean "it must affect the plaintiff in a personal and individual way."[13] Grievances on behalf of an abstract class are insufficient.

---

[8] *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) ("A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority.").

[9] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

[10] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (cleaned up).

[11] *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269, 272 (5th Cir. 2021).

[12] *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

[13] *Spokeo*, 578 U.S. at 339.

## B. Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a claim that is not plausibly alleged.[14] To survive a 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[15] A claim is plausible when it "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[16] which requires "more than a sheer possibility that [the] defendant has acted unlawfully."[17] "[A] formulaic recitation of the elements of a cause of action will not do."[18] And the pleading must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[19] The court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[20]

### III. Analysis

Savoya seeks to dismiss all of Plaintiffs state law claims, raising two principal reasons. First, Savoya argues that Plaintiffs lack standing to bring their recordkeeping claims under New York law, or the claims are otherwise implausible. Second, Savoya argues that Plaintiffs' remaining state law claims are preempted by the FLSA. Although the Court disagrees with Savoya that Plaintiffs lack standing and that the FLSA preempts New York state law, the Court declines to exercise

---

[14] Fed. R. Civ. P. 12(b)(6).

[15] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[17] *Id.*

[18] *Id.* (cleaned up).

[19] *Id.*

[20] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (cleaned up).

4

supplemental jurisdiction and **DISMISSES** Plaintiffs' state law claims without prejudice.

### A. Recordkeeping Claims

Under the New York Law, employers must provide each employee a notice of their rate of pay and a wage statement listing specific information with each paycheck.[21] Savoya argues that Plaintiffs do not have standing because their facts are contradictory, or alternatively, the facts in the complaint are not plausible.

Section 195 of the New York Labor Law requires an employer provide a statement detailing the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances.[22] Additionally, New York Labor Law provides for statutory damages of up to $10,000 for the failure to provide the required wage notices and wage statements.[23]

In order for a plaintiff to bring a claim under a statutory right, he must suffer an injury in fact due to the defendant's violation of law.[24] The Court disagrees that Plaintiffs fail to plead an injury in fact. Instead, Plaintiffs expressly state that Savoya's failure to provide them with the wage statements prevented them from advocating for their overtime benefits prior to this suit.[25] That is a "causal

---

[21] *See generally* N.Y. LAB. LAWS §§ 195(1), (3).

[22] *Id.* § 195(3).

[23] *Id.* § 198(1)(b), (d).

[24] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo*, 578 U.S. at 341) (rejecting "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'").

[25] Doc. 10 at 12.

connection" between the wage statements Savoya did not provide and "downstream harm[]."[26]

Additionally, Savoya moved to dismiss the recordkeeping claims for failure to state a claim under Rule 12(b)(6). The facts, as alleged in the Amended Complaint, as sufficient to plausibly state a claim. Plaintiffs' necessity to estimate the hours they worked for their other claims, because Savoya did not provide the required statements, does not render the recordkeeping claim implausible.

### B. FLSA Preemption

Next, Savoya moved to dismiss Plaintiffs' remaining state law claims as preempted by the FLSA. Both sides argue that *Aldridge v. Mississippi Department of Corrections* controls this case, but they read that case differently.[27] In *Aldridge*, the Fifth Circuit held that state law *tort* claims for conduct prohibited by the FLSA were preempted.[28] Here, Savoya seeks dismissal of state *statutory* claims that prohibit the same conduct as the FLSA. But *Aldridge* expressly does not control this case. Instead, the Fifth Circuit was abundantly clear that "[w]hether the FLSA preempts state law claims when the state does provide for minimum wages and

---

[26] *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (discussing standing for the same New York state provision).

[27] 990 F 3d. 868 (5th Cir. 2021).

[28] *Id.*

overtime compensation is not before us."[29]  And they "save[d] that issue for a different day."[30]  Today is that day, at least for this Court.

"There are three types of federal preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption."[31]  The Fifth Circuit rejected the argument that the FLSA preempts state law expressly or by field preemption.[32]  There are two types of conflict preemption: impossibility and obstacles-and-purposes preemption.[33]

Savoya's argument rests entirely on a theory of obstacles-and-purposes conflict preemption. Obstacles-and-purposes preemption "arises when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"[34]  "In all these types of preemption, however, 'evidence of pre-emptive purpose must be sought in the text and structure of the federal provision at issue.'"[35]

The federal provision at issue here is the FLSA, passed in 1938.  The purpose of the FLSA is "to protect all covered workers from substandard wages and oppressive working hours."[36]  And the FLSA has a savings provision that provides: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher

---

[29] *Id.* at 872 n.10.

[30] *Id.*

[31] *Id.* at 874.

[32] *Id.*; *see also, Casey v. Rainbow Grp., Ltd.*, 109 F.3d 765, *5 (5th Cir. 1997) (unpublished) (finding "no indication of express preemption" in the FLSA).

[33] *Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326, 329 (5th Cir. 2025).

[34] *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

[35] *Id.* (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)) (cleaned up).

[36] *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).

than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter."[37] Notably, Congress's inclusion of the savings provision is evidence that Congress did not have preemptive purpose for the FLSA.[38]

After all, where New York law provides added protection for workers, it does not "'stand as an "obstacle" to the accomplishment of [the FLSA's] objective,' namely, protecting workers from overwork and underpayment."[39] This is categorically different from attempting to bypass the FLSA by asserting common law causes of action, as was the case in *Aldridge*. Moreover, the majority approach around the country rejects preemption of state statutory law that provides *additional* protection for workers.[40]

Although the Fifth Circuit favorably cited *Roman v. Maietta Construction*,[41] a First Circuit case construed to relate to preemption, that decision came *after* a bench

---

[37] 29 U.S.C § 218(a).

[38] *See Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 248 (2d Cir. 2011) (finding that the savings clause "demonstrates Congress' intent to allow state wage laws to co-exist with the FLSA by permitting explicitly, for example, states to mandate greater overtime benefits than the FLSA"); *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 262 (3rd Cir. 2012) (stating that "the presence of the savings clause undermines any suggestion that Congress intended to occupy the field of wage and hour regulation."); *McLeland v. 1845 Oil Field Services*, 97 F.Supp.3d 855, 864 (W.D. Tex. 2015) (finding that FLSA's savings clause provides that state laws more stringent that the protections in FLSA are not preempted).

[39] *Aldridge v. Mississippi Dep't of Corrections*, 990 F 3d. 868, 875 (5th Cir. 2021) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000)).

[40] *See supra* note 38.

[41] 147 F.3d 71, 76 (1st Cir. 1986).

trial and is better understood as prohibiting double recovery.[42] Concerns about double recovery are inapplicable at this stage.

Savoya raises three other arguments regarding preemption. First, Savoya argues that the *logic* of *Aldridge* supports preemption. But for the reasons stated above, the Court disagrees. Second, Savoya argues that the "overlapping purposes" and conceptual similarities between the FLSA and New York Labor Law requires preemption. But that argument misunderstands obstacles-and-purposes preemption. Instead, the FLSA contemplates concurrent state regulation by virtue of the savings provision. And insofar as employment was historically regulated, that was done at the state level.

Third and finally, Savoya argues that the FLSA opt-in and Rule 23 opt-out procedures are incompatible in the same action. Although that is not a basis for preemption, the Court is inclined to decline supplemental jurisdiction on this basis.[43]

Where a district court has original jurisdiction over a civil action, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[44] However, even

---

[42] Cuhadar and Ergebzer expressly reject "receiving double recovery for identical injuries – *e.g.*, payment for the same expense reimbursements twice." Doc. 20 at 6.

[43] The Court notes that Plaintiffs did not plead diversity jurisdiction as a basis for the state law claims in addition to supplemental jurisdiction. Moreover, the pleadings are insufficient for diversity jurisdiction because Plaintiffs pled that "Defendant Savoya, LLC is a Delaware corporation with its principal place of business in Dallas, Texas." Doc. 10 at 5. But for diversity purposes, the citizenship of an LLC is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–80 (5th Cir. 2008).

[44] 28 U.S.C. § 1367(a).

where a district court has supplemental jurisdiction, it may decline to exercise supplemental jurisdiction "in exceptional circumstances" if "there are other compelling reasons for declining jurisdiction."[45] Further supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right."[46]

Here, FLSA opt-in and Rule 23 opt-out procedures are an exceptional circumstance to decline jurisdiction. Although Plaintiffs cite district court cases that did not decline jurisdiction, this Court exercises its discretion to decline jurisdiction. Further, it is likely that the state law claims may predominate over the FLSA claim by the mere fact that a Rule 23 class action utilizes an opt-out procedure instead of opting in, like the FLSA. The resolution of this motion to dismiss—and motion to strike—are further evidence of the predomination of the state law claims. Accordingly, the Court declines to exercise jurisdiction.

## IV. Conclusion

Accordingly, the Court **GRANTS IN PART** Savoya's Motion to Dismiss and the Court **FINDS AS MOOT** Savoya's Motion to Strike having declined to exercise jurisdiction over the state law claims in this action. Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 8th day of October, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[45] *See* 28 U.S.C. § 1367(c)(4).

[46] *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 172 (1997) (cleaned up).